```
                    UNITED STATES DISTRICT COURT
                             FOR THE
                       DISTRICT OF VERMONT
```

WARREN MANGIONE,                         :
                                         :
        Plaintiff,                       :
                                         :
        v.                               :   Case No. 2:06-cv-216
                                         :
UNUM PROVIDENT CORPORATION and           :
UNUM LIFE INSURANCE COMPANY OF           :
AMERICA,                                 :
                                         :
        Defendants.                      :

## MEMORANDUM OPINION and ORDER

In this suit claiming a wrongful offset for overpayment of long-term disability benefits, the parties have cross-moved for summary judgment.  For the reasons that follow, the Defendants' Motion for Summary Judgment (Doc. 11) is **granted.**  The Plaintiff's Motion for Summary Judgment (Doc. 14) is **denied.**

## Factual Background

The following facts are undisputed.  Plaintiff Warren Mangione suffered a work-related back injury on November 15, 2001, while employed by Healthcare & Rehabilitation Services of Southeastern Vermont ("HCRS").  HCRS offered group long-term disability insurance through Defendant Unum Life Insurance Company of America's ("Unum") Group Insurance Policy 529403 001 (the "Policy").  The Policy provides for a monthly benefit after any deductible sources of income are subtracted. (R. UACL00284.)[1]

---

[1]  References are to the record Unum compiled for its consideration of Mangione's claim for long-term disability

According to the Policy, deductible sources of income include amounts that a claimant is entitled to receive under workers' compensation and social security disability ("SSDI") payments. (R. UACL00270-71.)[2]  If a claimant receives a lump sum payment from any deductible source of income, the lump sum will be pro-rated over the period for which the lump sum is given, or a reasonable period if no time period is stated.  (R. UACL00268.) The Policy also provides that if Unum overpays a claimant, Unum must be reimbursed, and it will decide how repayment is to be made.  (R. UACL00281.)

---

benefits, pages UACL00001-UACL01198.

[2]  The Policy states in pertinent part:
**WHAT ARE DEDUCTIBLE SOURCES OF INCOME?**
     UNUM will subtract from your gross disability payment the following deductible sources of income:
     1.  The amount that you receive or are entitled to receive under:
     - a workers' compensation law
     - an occupational disease law
     - any other **act** or **law** with similar intent.

     2.  The amount that you receive or are entitled to receive as disability income payments under any:
     - state compulsory benefit **act** or **law**
     - automobile liability insurance policy
     - other group insurance plan
     - governmental retirement system as a result of your job with your Employer.

     3.  The amount that you, your spouse and your children receive or are entitled to receive as disability payments because of your disability under:
     - the United States Social Security Act . . .
     - any similar plan or act.
(R. UACL00270-71.)

Due to his injury Mangione was unable to return to work at HCRS.  Mangione submitted a claim to Unum for long-term disability benefits on or about December 20, 2001.  Unum accepted the claim, notified Mangione that it would begin to pay benefits and referred Mangione to his certificate of insurance for details.  (R. UACL00166-69.)

Unum paid benefits to Mangione from March 17, 2002 to October 16, 2005.  Unum had taken an offset for temporary total disability ("TTD") workers' compensation benefits for the period March 17, 2002 through April 16, 2004.

Mangione subsequently received a lump sum award of $40,768.59 for permanent partial disability ("PPD") workers' compensation benefits.

Mangione began receiving SSDI benefits in November 2005. (R. UACL00703-07.)  According to the Social Security Administration's Notice of Award of monthly disability benefits, Mangione was to receive a lump sum of $4,592.00 for benefits to which he was entitled from April 2004[3] through October 2005. Thereafter he was to receive a monthly payment of $1,237.00.  (R. UACL00707.)  The Notice of Award also stated that Mangione's SSDI benefits were being reduced to account for monthly workers' compensation payments of $1,425.50 from April 2004 through August

---

[3]  Although Mangione was entitled to SSDI benefits beginning January 2004, his check amounts were withheld from January through March 2004 to account for workers' compensation payments.

2005, but that he would receive the full social security rate of $1,237.00 beginning September 2005.  (R. UACL00704.)

Unum informed Mangione in a letter dated November 11, 2005 that because he had received long-term disability benefits that had not been reduced to account for social security benefits paid for the same period, it had overpaid him $11,369.31.  Unum requested reimbursement.  (R. UACL00699-700.)

Mangione questioned Unum's calculations in a letter dated November 27, 2005, and Unum responded with an explanation and request for documentation.  (R. UACL00677-78; 681-82.)  In a letter dated December 19, 2005, Mangione's attorney confirmed that Mangione received TTD benefits from workers' compensation through March 2004, after which he was no longer entitled to TTD benefits, and thereafter he received a lump sum payment of PPD benefits for permanent impairment of his spine.  (R. UACL00621-22.)

By letter dated December 30, 2005, Unum reiterated its determination that it had overpaid Mangione's long-term disability claim, and gave notice that it would begin applying Mangione's full monthly benefit to the overpayment.  (R. UACL00617-19.)  Mangione contended that because his PPD benefits represented a payment for permanent injury rather than replacement of lost income, the PPD benefits should not be considered a deductible source of income under the Unum policy.

(R. UACL00606-07.)  Unum disagreed, and adhered to its overpayment determination.  (R. UACL00611-12.)  Upon administrative review, the appeals consultant upheld Unum's determination.  (R. UACL00575-77.)  This suit followed, seeking a declaration that Mangione's PPD award was not a deductible source of income under the Policy.

From January 2006 through January 2007 Unum ceased paying any long-term disability benefit to Mangione, and instead applied the monthly benefit amount to the overpayment it had calculated.  Unum resumed paying a monthly benefit in February 2007.

## Discussion

### I. Standard of Review

Under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA"), a district court reviews a claim administrator's benefit determination "under a de novo standard unless the benefit plan gives the administrator . . . discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).  Where the benefit plan does give the administrator such authority, the administrator's determination is reviewed under the arbitrary and capricious standard.  *Krauss v. Oxford Health Plans, Inc.*, 517 F.3d 614, 622 (2d Cir. 2008).  A benefit determination will "be overturned as arbitrary and capricious only if the decision is 'without reason,

unsupported by substantial evidence or erroneous as a matter of law.'"  *Fay v. Oxford Health Plan*, 287 F.3d 96, 104 (2d Cir. 2002) (quoting *Kinstler v. First Reliance Standard Life Ins. Co.*, 181 F.3d 243, 249 (2d Cir. 1999)).

"[I]f a benefit plan gives discretion to an administrator . . . who is operating under a conflict of interest, that conflict must be weighed as a 'facto[r] in determining whether there is an abuse of discretion.'"  *Firestone*, 489 U.S. at 115 (quoting Restatement (Second) of Trusts § 187 cmt. d (1950)).  A conflict of interest exists for ERISA purposes when a plan administrator both evaluates claims for benefits and pays benefits claims.  *Metropolitan Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2349 (2008).

The Policy in this case provides that "[w]hen making a benefit determination under the policy, Unum has discretionary authority to determine [a claimant's] eligibility for benefits and to interpret the terms and provisions of the policy."  (R. UACL00277.)  Thus, this Court reviews the administrator's determination in this case under the arbitrary and capricious standard.  As both an evaluator of claims and a payer of benefits, Unum operates under a conflict of interest that will be taken into consideration when determining whether the administrator's determination was arbitrary and capricious.  *See id.* at 2352.  For example, "circumstances suggest[ing] a higher

likelihood that [the conflict of interest] affected the benefits decision" will weigh against the lawfulness of a benefits denial. *Id.* at 2351.  That does not mean a change in the standard of review, however, which remains deferential to the administrator's discretionary decisionmaking.[4]  *Id.* at 2350; *accord Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 442 (2d Cir. 1995) (existence of conflict does not operate to change the standard of review).

This Court's review of the plan administrator's determination "is limited to the administrative record."  *Miller v. United Welfare Fund*, 72 F.3d 1066, 1071 (2d Cir. 1995).  On cross-motions for summary judgment, the evidence supporting each motion is construed in the light most favorable to the non-moving

---

[4]  Mangione argues that Unum's interpretation of the Policy should be reviewed de novo, asking this Court to infer from his report of a recent settlement of litigation that "Unum has demonstrated a pattern of questionable conduct with regard to Vermont claimants."  (Mem. of Law in Supp. of Pl.'s Cross Mot. for Summ. J. 4 (Doc. 14).)  The United States Supreme Court's decision in *Metropolitan Life v. Glenn* forecloses Mangione's argument.  *See* 128 S. Ct. at 2350.  To the extent that Mangione may contend that the reported settlement should be taken into account when determining the lawfulness of Unum's determination with respect to Mangione, he has provided no basis for a conclusion that there is any connection whatsoever, even a tenuous one, with his benefits determination.  *See id.* at 2351 ("The conflict of interest at issue . . ., for example, should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of biased claims administration."); *see also Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 443 (2d Cir. 1995) (claimant failed to explain how an alleged conflict of interest affected the reasonableness of a determination of ineligibility for disability benefits).

party.  *See Krauss*, 517 F.3d at 621-22.

## II.  The Offset Provision

Unum argues that it properly treated the PPD award as a deductible source of income.  The first paragraph of the Policy's section defining deductible sources of income stated without qualification that deductible sources of income include "[t]he amount that you receive or are entitled to receive under . . . a workers' compensation law."[5]  (R. UACL00271.)  Mangione does not dispute that according to the plain language of the Policy, a PPD award is a deductible source of income.  Essentially he argues that the Policy cannot as a matter of law include a PPD award as a deductible source of income.

Mangione bases this argument on several cases that analyze whether workers' compensation benefits may be deducted from retirement benefits without violating ERISA's nonforfeiture provisions.[6]  *See Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 526 (1981) (declining to prohibit offset of pension benefits based on workers' compensation awards); *Bonovich v. Knights of*

---

[5]  By contrast, the next paragraph specifies that amounts received under any state compulsory benefit act or law, automobile liability insurance policy, other group insurance plan or governmental retirement system must be disability income payments to be deemed deductible sources of income.  (R. UACL00271.)

[6]  Under ERISA, "[e]ach pension plan shall provide that an employee's right to his normal retirement benefit is nonforfeitable upon the attainment of normal retirement age."  29 U.S.C. § 1053(a).

8

*Columbus*, 146 F.3d 57, 62 (2d Cir. 1998) (upholding integration of renewal commissions with pension benefits as satisfying any requirement under ERISA or *Alessi* that a nexus exist between the income to be integrated and the income-replacement function of pensions); *Losada v. Golden Gate Disposal Co.*, 950 F.2d 1395, 1400 (9th Cir. 1991) (refusing to allow workers' compensation award for bodily impairment to be offset against pension benefits); *Reska v. Pension Plan of Bethlehem Steel Corp.*, 848 F.2d 372, 375 (2d Cir. 1988) (holding that nonforfeiture provisions of ERISA did not preclude reduction of pension benefits by amount of workers' compensation PPD award, construing New York workers' compensation law); *Employee Benefits Comm. v. Pascoe*, 679 F.2d 1319, 1321-22 (9th Cir. 1982) (reversing district court's conclusion that pension plan provision permitting offset of workers' compensation benefits violated ERISA, but distinguishing awards intended as income replacement from awards for bodily impairment).

Mangione contends that this Court should apply the "nexus" test discussed in *Bonovich*, and require a correlation between the income-replacement function of long-term disability benefits and the nature of his workers' compensation PPD award.  Assuming for the sake of argument that a nexus test could be lifted from cases considering the nonforfeitability of pension benefits and applied in the context of employee welfare benefit plans, Mangione's

argument founders on his overly narrow interpretation of the purpose of workers' compensation PPD awards under Vermont law.

In *Bishop v. Town of Barre*, 442 A.2d 50, 53 (Vt. 1982), the Vermont Supreme Court explained that under the Vermont Workers' Compensation Act an award of permanent disability benefits, although calculated on the basis of physical impairment regardless of loss of earning power, is "a means to insure against wage loss" (emphasis omitted).  Thus, were a nexus test appropriate in this context, a nexus exists between the wage replacement purpose of long-term disability benefits and a PPD award under Vermont workers' compensation law.

Unum's determination to offset Mangione's 2004 workers' compensation award as a deductible source of income under the Policy was a reasonable interpretation of the Policy language, was not legal error, and therefore will not be overturned as arbitrary and capricious.

### III. **The Recoupment Method**

The Policy provides that if a claimant "receive[s] a lump sum payment from any deductible sources of income, the lump sum will be pro-rated on a monthly basis over the time period for which the sum was given.  If no time period is stated, [Unum] will use a reasonable one."  (R. UACL00268.)  The Policy also provides that if Unum overpays a claim due to a claimant's receipt of deductible sources of income, the claimant "must

reimburse [Unum] in full.  [Unum] will determine the method by which the repayment is to be made."  (R. UACL00281.)  Although the Policy guarantees a minimum monthly payment, it provides that "Unum may apply this amount toward an outstanding overpayment."  (R. UACL00269.)

    Mangione's PPD award did not include a time period.  Unum was therefore obliged to use a reasonable time period to pro-rate the award.  The record reflects that Unum calculated its overpayment using the same monthly amount ($1,425.50) that the Social Security Administration used to pro-rate the lump sum award, minus attorney's fees and expenses, over a seventeen-month period.[7]  (R. UACL00694, 704.)  Accordingly, Mangione has not shown that Unum violated the terms of the Policy requiring pro-ration of a lump sum payment.  Nor has Mangione shown that Unum's use of the Social Security Administration's seventeen-month pro-ration figure was unreasonable.

    Mangione contends that the Policy requirement to pro-rate a lump sum payment over a reasonable time period requires Unum to pro-rate recovery of any overpayment in a similar fashion.  The Policy contains no such requirement; its provisions permit Unum to determine the method of repayment and to reduce its benefit

---

[7] Unum notes that it may have multiplied the monthly pro-rated amount by five rather than seventeen months, resulting in an apparent underestimation of the overpayment.  That issue is not before the Court.

payment to zero to recover an overpayment.  Unum pro-rated the lump sum to determine the amount of the monthly offset and whether it had made an overpayment.  Once it had calculated the overpayment, it ceased paying benefits for thirteen months, until it had recouped the amount it determined it had overpaid.  The express language of the Policy permitted this approach.[8]  Mangione has not shown that Unum's approach was unreasonable, unsupported by substantial evidence, or erroneous as a matter of law; accordingly it will not be overturned as arbitrary and capricious.

## Conclusion

For the reasons stated above, Defendants' Motion for Summary Judgment (Doc. 11) is **granted**.  Plaintiff's Cross Motion for Summary Judgment (Doc. 14) is **denied.**

Dated at Burlington, in the District of Vermont, this 18th day of July, 2008.

/s/ William K. Sessions III
William K. Sessions III
Chief Judge
U.S. District Court

---

[8]  Although Unum also contends that the thirteen-month recovery period was reasonable, apparently agreeing that the requirement to pro-rate a lump sum award over a reasonable time period extends to pro-ration of recovery of an overpayment due to a lump sum award, see Defs.' Mem. of Law in Opp'n to Pl.'s Mot. for Summ. J. 17, 19 (Doc. 15), the Policy language does not support this interpretation.  The Court expresses no opinion on the reasonableness of an overpayment recovery period that coincides exactly with the shortest time to recover the overpayment by reducing benefit payments to zero.